UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| PARKER STEWART, IMINDY, LLC, AND ITS SUCCESSORS AND ASSIGNS;<br><br>Plaintiffs,<br><br>vs.<br><br>PLAINS COMMERCE BANK, CHRISTOPHER HAMZE, INDIVIDUALLY AND AS MEMBER OF IMINDY, LLC, MEMBER OF TEE LAUNCH LB, ORGANIZER & REGISTERED AGENT OF FANTOM DTG, LLC & ORGANIZER OF INFINITE SUPPLY, LLC; NICHOLAS HAMZE, INDIVIDUALLY AND AS ORGANIZER & REGISTERED AGENT OF FYMCO, LLC, ORGANIZER OF FANTOM DTG, LLC AND ORGANIZER & REGISTERED AGENT OF INFINITE SUPPLY, LLC; TED HAMZE, CHRISTOPHER MARBUS, FYMCO, LLC, AND ITS SUCCESSORS AND ASSIGNS; TEELAUNCH LB, AND ITS SUCCESSORS AND ASSIGNS; FANTOM DTG, LLC, AND ITS SUCCESSORS AND ASSIGNS; INFINITE SUPPLY, LLC, AND ITS SUCCESSORS AND ASSIGNS; AND DISTRICT PHOTO, AND ITS SUCCESSORS AND ASSIGNS;<br><br>Defendants. | 4:25-CV-04007-RAL<br><br><br>OPINION AND ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES |

On September 23, 2025, this Court granted motions to dismiss a Complaint brought by Plaintiffs Parker Stewart (Stewart) and imINDY, LLC (imINDY). Doc. 83. The Complaint alleged several Racketeer Influenced and Corrupt Organizations Act (RICO) claims and certain

1

state law claims against three groups of Defendants: 1) Plains Commerce Bank (PCB) and its employee Christopher Marbus (Marbus); 2) Christopher Hamze (Chris), Nicholas Hamze (Nick), Ted Hamze (Ted),[1] FYMCO, LLC (FYMCO), Teelaunch LB (Teelaunch), Fantom DTG LLC (Fantom), Infinite Supply, LLC (Infinite Supply); and 3) District Photo. Doc. 1. The lawsuit contained various claims concerning the ownership and operations of imINDY, which was an LLC Stewart and Chris had co-founded in 2012 and co-owned until September 2023. Id. ¶¶ 17, 22–26, 108–09. This gist of the claims was that Defendants had conspired together and acted wrongfully in bleeding imINDY of capital and, in turn, injuring Stewart as well as deceptively causing him to sell his imINDY ownership at a discount. Plaintiffs also sought a Declaratory Judgment under 28 U.S.C. § 2202 to void the buyout agreement, whereby Stewart had sold his ownership interest in imINDY to Chris before bringing the above-captioned case. Id. ¶¶ 121–28.

As explained in the Opinion and Order, this Court first determined that Stewart, a former member of imINDY, did not have standing to bring a lawsuit on behalf of imINDY, a named Plaintiff. Doc. 83 at 13–16. Federal Rule of Civil Procedure 17 "requires that the plaintiff actually possess, under the substantive law, the right sought to be enforced." Curtis Lumber Co. v. La. Pac. Corp., 618 F.3d 762, 771 (8th Cir. 2010) (cleaned up and citation omitted). As a limited liability company, imINDY's capacity to sue is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Thus, South Dakota law governed this Court's determination of whether imINDY had the capacity to sue in the above-captioned case. When Stewart signed the Purchase Agreement, he disassociated from imINDY, which terminated his right to maintain a derivative action to enforce a right of imINDY under South Dakota law. See SDCL §§ 47-34A-603(b)(1), 47-34A-1102. Because Stewart was not a member of imINDY at the time he

---

[1] Defendant Ted Hamze passed away during the litigation of this case. See Doc. 51.

commenced the above-captioned case, this Court determined that Stewart could not maintain this action on behalf of imINDY. SDCL § 47-34A-1103(a).

This Court then determined that Stewart could not bring the RICO actions in his individual capacity because he failed to plead any direct injuries sufficient to establish a RICO claim. See Doc. 83 at 16–27. A plaintiff asserting an injury that is purely derivative of a corporate injury lacks standing to sue under RICO without a showing of a direct injury. Brennan v. Chestnut, 973 F.2d 644, 648 (8th Cir. 1992). Under Supreme Court and Eighth Circuit precedent, the injuries that Stewart alleged were not enough to establish a direct injury to his business or property to allow Stewart to have standing for a RICO claim. See Doc. 83 at 19–26. Taking the allegations in the Complaint as true, the alleged injuries were either derivative, meaning that they were targeted against imINDY or Stewart in his capacity as a shareholder, or they alleged damage to Stewart's professional reputation and personal well-being, which also failed to establish standing for Stewart's individual civil RICO claim. See id. Finally, despite his allegations concerning the alleged fraud surrounding the buyout agreement, Stewart could not base his RICO claims on this alleged fraud where he could have pursued a derivative action on behalf of imINDY before his sale of his shares but chose not to. See id. at 23–24. Because Stewart could not pursue RICO claims on behalf of imINDY and Stewart failed to establish civil RICO standing in his individual capacity, this Court dismissed Plaintiffs' RICO claims and declined to exercise supplemental jurisdiction over the remaining state-law claims. Doc. 83 at 27.

With the Opinion and Order Granting Motions to Dismiss, this Court entered a Judgment of Dismissal. Doc. 84. Now before this Court are two pending motions: one motion for attorney's fees filed by counsel for Defendants Chris, Nick, Ted, FYMCO, Fantom, and Infinite Supply, Doc. 87, and one motion to alter or amend judgment filed by Plaintiffs, Doc. 90. As explained below,

the motion to alter or amend the judgment is denied, and the motion for attorney's fees is granted in part and denied in part.

I.     **Motion to Alter or Amend Judgment**

On October 10, 2025, Plaintiffs filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e).[2] Doc. 90. Plaintiffs move this Court to alter or amend its Opinion and Order on Defendants' motions to dismiss, Docs. 38, 41, and 57, and request that this Court vacate the Opinion and Order, enter a declaratory judgment voiding the Plaintiffs' buyout agreement, and enter an order denying the Defendants' motions to dismiss. Doc. 90 at 1–2. Plaintiffs argue that this Court should alter or amend its dismissal of Plaintiffs' RICO claims because the Opinion and Order 1) relies on critical errors and mischaracterizations of fact concerning Stewart's alleged injuries, the role of District Photo, and the enforceability of the buyout agreement; 2) relies on critical errors of law, including one that Plaintiffs dub "South Dakota Shareholder Standing Preemption Theory"; 3) analyzes Plaintiffs' prudential standing, an issue they contend Defendants did not argue in their motions to dismiss; and 4) creates a manifest injustice against every similarly situated plaintiff. Doc. 90 at 8–33. Plaintiffs conclude by asserting that this Court's Opinion and Order "legalizes racketeering in South Dakota" and compares this Court's decision to Plessy v. Ferguson. Id. at 35–36. All Defendants oppose the motion to alter or amend judgment. Docs. 100, 103, 104.

---

[2] This Court's Local Rules require court approval for briefs exceeding thirty pages. D.S.D. Civ. LR 7.1(B)(1). Plaintiffs did not ask for approval from this Court to file an overlength brief, and their brief exceeded thirty pages. See Doc. 91. Defendants Hamzes and related companies requested that Plaintiffs' motion be stricken for procedural defects. Doc. 103 at 2 n.1. However, this Court has read and considered all arguments submitted by Plaintiffs and chooses not to strike Plaintiffs' overlength brief.

Under Federal Rule of Civil Procedure 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Motions to alter or amend a judgment "serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988)). A motion under Rule 59(e) "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (cleaned up and citation omitted). This Court has broad discretion in deciding whether to grant or deny a motion to alter or amend its judgment under Rule 59(e). Metro. St. Louis Sewer Dist., 440 F.3d at 933; see also Saylor v. Jeffreys, 131 F.4th 864, 868 (8th Cir. 2025) ("[Appellant's] rule 59(e) motion repeated arguments that the district court rejected in dismissing his complaint. There is no ground for reversal."); Voss v. Hous. Auth. of the City of Magnolia, 917 F.3d 618, 626 n.6 (8th Cir. 2019) (concluding "the district court did not abuse its discretion in denying [appellant's] Rule 59(e) motion, which largely repeated the same arguments advanced at the summary judgment stage").

Plaintiffs repeat the same arguments concerning the alleged RICO injuries that this Court has already considered and rejected. See Saylor, 131 F.4th at 868. In disagreeing with this Court's reasoning, Plaintiffs fundamentally misunderstand key points of law and the reasoning of the Opinion, including why the Opinion relied upon South Dakota law in parts of its analysis; the characterization of Stewart's injuries as derivative, and not direct, injuries; and the reasoning for dismissing claims against District Photo. In its analysis, this Court determined, as directed by Rule 17, whether Stewart could bring a lawsuit on behalf of imINDY under "the law of the state where

5

the court is located," here, South Dakota law. Doc. 83 at 13–14 (citing Fed. R. Civ. P. 17(b)(3)). Further, this Court did not create a "South Dakota Derivative Shareholder Dispute Standing Requirement" when it determined that Stewart's alleged injuries were derivative and not sufficient to establish RICO standing. Applying relevant and binding federal law, this Court reviewed each injury alleged because a plaintiff, like Stewart, asserting an injury that is purely derivative of a corporate injury, such as an injury to imINDY, lacks standing to sue under RICO without a showing of a direct injury. Id. at 17–18 (citing Brennan, 973 F.2d at 648).[3] Within briefing on their pending motion to alter or amend judgment, Plaintiffs' argument again reveals that Stewart's main alleged injury is derivative by focusing on how the alleged scheme targeted imINDY and not Stewart. See Doc. 91 at 8, 14–15, 32 (noting that "detailed accounts from the well pleaded Complaint objectively create an inference that money [was] being funneled from imINDY by the RICO conspirators" and "the funds the Defendants 'siphoned' from the account illegally, 50% of which were the property of Parker Stewart"). Finally, this Court dismissed claims against District Photo not because it "argu[ed] District Photo bears no liability in this case" as Plaintiffs have written, see id. at 11, but because Stewart failed to establish that he could bring claims on behalf of imINDY or that he suffered a direct injury cognizable under RICO to establish such a claim against District Photo or any other defendant.

This Court remains comfortable with its ruling on the RICO claims and does not find its ruling to be a "manifest error[] of law or fact" meriting a grant of Plaintiffs' Motion to Alter or Amend the Judgment. See Innovative Home Health Care, 141 F.3d at 1286. This Court's

---

[3] Although Plaintiffs also assert that this Court missed certain Supreme Court cases on standing in RICO litigation, such as Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), see Doc. 91 at 23, this Court did cite this case, and many others, in its extended discussion on establishing RICO standing as a former shareholder. See Doc. 83 at 17 (citing Holmes, 503 U.S. at 265–68).

reasoning is contained in its 31-page Opinion and Order Granting Motions to Dismiss Without Prejudice, Doc. 83, and need not be fully recited anew. Plaintiffs' remedy now lies with an appeal to the Eighth Circuit, which they have already filed following the entry of judgment in this case. See Doc. 92.

## II.     Motion for Attorney's Fees

Following this Court's entry of Judgment of Dismissal, Doc. 84, counsel for Defendants Chris, Nick, FYMCO, Fantom, and Infinite Supply filed a Motion for Attorney's Fees under Federal Rule of Civil Procedure 54(d)(2), Local Rule 54.1(C), and the contractual provisions of buyout agreement, which was attached to Plaintiffs' Complaint as Exhibit W. Doc. 87 (citing D.S.D. Civ. LR 54.1(C) and Doc. 1-23). Counsel for those named Defendants, Corey Bruning, also filed time sheets detailing his fees and costs, which totaled $26,059.89 after state sales tax. Doc. 88-1. In support of their motion, Defendants Chris, Nick, FYMCO, Fantom, and Infinite Supply highlight the contractual language of the buyout agreement in which Stewart released and indemnified Chris, imINDY, and others. Doc. 87 at 1–2. The relevant provision in the buyout agreement, with the specific language italicized, reads:

> 4. **Mutual Release of Claims.** For good and valuable consideration, including the surrendering of any and all interest in the ownership and assets of Company,[4] the receipt and sufficiency of which is hereby acknowledged, Company hereby releases, acquits, forever discharges, and indemnifies Seller,[5] his successors and assigns, Seller's family, insurers, and attorneys from any and all actions, causes of action, claims, demands, costs, attorney's fees and expenses on account of or in any way arising out of claims asserted against Seller relating to or in any way arising out of Christopher's and Parker's ownership of and employment through imINDY LLC.

---

[4] As defined earlier in the Purchase Agreement and Mutual Release of Claims, "Company" refers to imINDY LLC. See Doc. 1-23 at 2.

[5] As defined earlier in the Purchase Agreement and Mutual Release of Claims, "Seller" refers to Parker Stewart. See Doc. 1-23 at 2.

7

>	For good and valuable consideration, including the Purchase Price, the receipt and sufficiency of which is hereby acknowledged, *Parker Stewart hereby releases, acquits, forever discharges, and indemnifies Christopher Hamze and imINDY LLC, along with their employees, agents, successors and assigns, Christopher's family, insurers, and attorneys from any and all actions, causes of action, claims, demands, costs, attorney's fees and expenses on account of or in any way arising out claims asserted against Christopher or imINDY LLC relating to or in any way arising out of Christopher's and Parker's ownership of and employment through imINDY LLC*

Doc. 1-23 at 3.

>	When moving for attorney's fees, Federal Rule of Civil Procedure 54 requires that
>
>	[u]nless a statute or a court order provides otherwise, the motion must:
>
>	(i) be filed no later than 14 days after the entry of judgment;
>	(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>	(iii) state the amount sought or provide a fair estimate of it; and
>	(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B); see also D.S.D. Civ. LR 54.1(C) (detailing proper procedures for moving for attorney's fees under Rule 54 in the District of South Dakota). This Court "may decide issues of liability for fees before receiving submissions on the value of services" and "must find the facts and state its conclusions of law as provided in Rule 52(a)." Fed. R. Civ. P. 54(d)(2)(C). Local Rule 54.1(C) modifies this procedure slightly to require instead that the motion be filed no later than 28 calendar days after the entry of judgment. D.S.D. Civ. LR 54.1(C). Following the briefing, this Court "will [] determine the appropriate attorney's fees, if any, without further hearing," unless this Court determines a hearing is warranted. Id.

The present motion for attorney's fees was filed within twenty-eight days after the entry of judgment, specified the contractual provision that it relied upon, stated the amount sought ($26,059.89), and disclosed additional terms of the Purchase Agreement and Mutual Release of

Claims. Docs. 87, 88, 88-1. Plaintiffs oppose the motion and argue that 1) there is no final judgment in this case as the motion to alter or amend the judgment is still pending; 2) there has been no ruling on the validity or the merits of the buyout agreement; and 3) the American Rule disallows the award of attorney's fees in a case like the one at hand. See Docs. 96, 97. Plaintiffs have neither contested the hourly fee rate charged by Defendants' counsel or the reasonableness of the total amount requested, nor argued that there has been any unfair notice or surprise. See id. Plaintiffs' arguments fail on multiple grounds.

First, the motion for attorney's fees was filed after a final judgment in this case. The Eighth Circuit "generally consider[s] only orders that dispose of all claims as final and appealable under [28 U.S.C.] § 1291." Huggins v. FedEx Ground Package Sys., Inc., 566 F.3d 771, 773 (8th Cir. 2009). "A dismissal without prejudice can be an appealable final order," and to be final, "there must be some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as the court is concerned, is the end of the case," such as "a final judgment of the district court dismissing the [] complaint in its entirety." Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 198 F.3d 685, 689 (8th Cir. 1999) (cleaned up and citations omitted). A final decision under § 1291 is still final "even if the award or amount of attorney's fees for the litigation remains to be determined." Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps., 571 U.S. 177, 179 (2014). The Opinion and Order, Doc. 83, dismissed the case in its entirety without prejudice, and this Court entered a judgment that is a final and appealable decision within the meaning of § 1291. Doc. 84. Indeed, Plaintiffs have already filed an appeal to the Eighth Circuit following the entry of judgment in this case. See Doc. 92. Finally, the argument that there is no final judgment due to the pending motion to reconsider fails because this Court is denying that motion as part of this Opinion and Order.

In addition, as discussed in the Opinion and Order Granting the Motions to Dismiss Without Prejudice, this Court cannot assume the buyout agreement is null and void merely because Plaintiffs argue and claim that the buyout agreement is unenforceable. See Doc. 83 at 15–16 (explaining this Court's reasoning for determining Stewart is a former member of imINDY given the buyout agreement). The buyout agreement has never been declared fraudulent or null in a court of law, and Plaintiffs' assertions that it should be set aside do not thereby render it unenforceable. It would make little sense for this Court to decline to exercise supplemental jurisdiction over state-law claims about the enforceability of the buyout agreement and then be required to adjudicate the enforcement of the buyout agreement on a post-judgment request for attorney's fees. Stewart's claims were dismissed without prejudice, meaning that he can sue in state court to assert fraud in the inducement of the contract and presumably recover in the state court proceeding[6] what amount he pays for defense attorney's fees. The remaining issue for this Court is what, if any, attorney's fees are allowed under the terms of the buyout agreement signed by Stewart and Chris.

Although the Purchase Agreement and Mutual Release of Claims does not contain a choice of law provision, the parties have both cited South Dakota law in their briefing on this question.[7] See Docs. 87, 96, 101. Generally, South Dakota law follows the American rule, which "provides that each party bears the burden of paying their own attorney's fees." Long v. State, 904 N.W.2d 358, 362 (S.D. 2017) (cleaned up and citation omitted). However, one exception to this rule "is that attorney's fees may be awarded to a prevailing party pursuant to a contractual agreement

---

[6] Of course, doing so could pose a risk to Stewart of responsibility for additional attorney's fees.

[7] The individual defendants reside in South Dakota, Doc. 1 ¶¶ 5, 7, and imINDY's operations appear to have been centered in South Dakota, id. ¶ 2. No party has questioned that South Dakota law governs the state-law claims plead.

between the parties." Id. In other words, "South Dakota law allows for an award of attorney fees to the party who prevails on the main issue in dispute when the parties agreed to it in their contract." Highmark, Inc. v. Nw. Pipe Co., No. CV 10-5089, 2016 WL 7017260, at *3 (D.S.D. Nov. 30, 2016).

The Supreme Court of South Dakota observed indemnity provisions generally "provide indemnity when third parties bring an action against the indemnitee, but not . . . when the dispute is between the two contracting parties." Icehouse, Inc. v. Geissler, 636 N.W.2d 459, 466–67 (S.D. 2001). However, "the clear language of the parties' agreement controls and may indicate an intent to the contrary," such as where "the language in [the clause at issue] clearly provides for and contemplates litigation between the contracting parties." Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc., 877 N.W.2d 318, 324 (S.D. 2016). The language in the indemnification clause at issue here commits Stewart to indemnify "Christopher Hamze[,]. . . Christopher's family," and certain others from "any and all actions, causes of action, claims, demands, costs, attorney's fees and expenses," which encompasses both third-party claims and intra-party disputes. Doc. 1-23 at 3. Defendants Chris, Nick, FYMCO, Fantom, and Infinite Supply have prevailed against Stewart on claims Stewart "asserted against Christopher or imINDY LLC," which related to and arose "out of Christopher's and Parker's ownership of and employment through imINDY LLC." Doc. 1-23 at 3; see also Docs. 83, 84. Therefore, the subject of this lawsuit, in part between two parties to this buyout agreement, is embraced by this indemnification clause, which both Stewart and Chris signed when represented by counsel.

This provision indemnifies Chris, Nick, and Ted. See Doc. 1-23 at 3 (indemnifying "Christopher Hamze and imINDY LLC, along with their employees, agents, successors and assigns, Christopher's family, insurers, and attorneys"). Nick and Ted are Chris's family, and

11

Nick also was employed by imINDY LLC. See Doc. 1 ¶¶ 4–6, 17, 38. However, this provision does not extend to any of the companies named as Defendants because they are not "employees, agents, successors and assigns, Christopher's family, insurers, and attorneys." Doc. 1-23 at 3. As Defendants FYMCO, Fantom, and Infinite Supply are not included in the buyout agreement's Mutual Release of Claims, this Court will award only the attorney's fees that appear to have been necessary in defending Chris and Nick (and Ted prior to his death), and not the three named defendant corporations.

Plaintiffs are liable for at least some attorney's fees under this contractual provision. This Court now "must determine the appropriate attorney's fees, if any" for work done on behalf of Chris, Nick, and Ted. D.S.D. Civ. LR 54.1(C). Attorney's fees can be calculated using the "lodestar" methodology or the "percentage of the benefit" methodology, and "[i]t is within the discretion of the [] court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig., 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action," whereas "the 'percentage of the benefit' approach[] permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 244–45 (8th Cir. 1996). The lodestar approach has been recommended for use in cases like "statutory fee-shifting cases because it is reasonably objective, neutral, and does not require making monetary assessments of intangible rights." Id. at 245. Here, this Court chooses to calculate a reasonable award of attorney's fees

utilizing the lodestar method "by multiplying the number of hours reasonably expended by the reasonable hourly rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005) (citation omitted). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." Id.

Defendants Chris, Nick, FYMCO, Fantom, and Infinite Supply seek reimbursement for 77.9 hours of work done by counsel Bruning, who charges $315.00 per hour, for a total cost of $26,059.89 after state sales tax. See Doc. 88-1 at 7. Plaintiffs have not objected to any specific task that counsel for Defendants has submitted, Bruning's hourly rate, or the reasonableness of the amount sought. See Docs. 96, 97.[8] Relying on its own experience and knowledge of prevailing market rates, this Court determines that Bruning's hourly rate is reasonable for his level of experience and expertise in the legal market in South Dakota. Having reviewed the detailed time entries, this Court also determines that Bruning billed for "reasonable work."

However, some of the tasks specifically relate to the representation of the company Defendants, who were not included in the indemnification provision. See, e.g., Doc. 88-1 at 3 (drafting corporate disclosures for FYMCO, Fantom, and Infinite Supply). Other tasks, such as drafting the Motion to Dismiss, were done on behalf of all represented Defendants, including Chris, Nick, FYMCO, Fantom, and Infinite Supply. See, e.g., id. at 4. Plaintiffs' Complaint contained fourteen counts, two of which were solely against the Plains Commerce Bank Defendants. Doc. 1. All remaining twelve claims named Chris at least among others, and four of those twelve counts named Chris exclusively. Id. Three counts named Chris and Nick and not the

---

[8] Plaintiffs argue that these Defendants have not established a "sound basis for reimbursement for costs incurred from defending frivolous claims," but Plaintiffs do not elaborate further on that argument within their response as it relates to the reasonableness of the time claimed or the reasonableness of the hourly rate sought. Doc. 96 at 1.

corporate Defendants, while the remaining five counts named all Defendants, including Chris, Nick, and the corporate Defendants. Id. In light of all of this and to account for the company-specific entries, as well as the work done representing those companies that is indivisible from the work done representing the indemnified individuals, this Court will reduce the overall award sought by one-third. This Court now awards $17,373.26 in attorney's fees and state sales tax incurred in representing Chris and Nick.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Plaintiffs' Motion to Alter or Amend the Judgment, Doc. 90, is denied. It is further

ORDERED that Defendants' Motion for Attorney's Fees, Doc. 87, is granted in part and denied in part, to the extent stated herein. An Amended Judgment will enter for Defendants Christopher Hamze and Nicholas Hamze in the sum of $17,373.26 in attorney's fees, which amount includes the corresponding state sales tax, payable by Plaintiff Parker Stewart.

DATED this 5th day of December, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE